Burton H. Marshall, Sr., and Burton H. Marshall, Jr., a Minor, Who Sues by Burton H. Marshall, Sr., His Father and Next Friend, Plaintiffs-Appellants, v. First American National Bank of Nashville, and Dixie Reeves Butts, Executors of the Estate of Macon Cooper Butts, Deceased, Defendants-Appellees.

Gen. No. 67–5.

Fifth District.

January 15, 1968.

Listeman, Bandy & Hamilton, of East St. Louis, and
C. E. Heiligenstein, of Belleville, for appellants.

Pope and Driemeyer, of East St. Louis, and Carmack
Cochran, of Nashville, Tennessee, for appellees.

MORAN, J.

Plaintiffs appeal from a judgment of the Circuit Court
of St. Clair County denying their motion for a judgment
notwithstanding the verdict and their alternative motion
for a new trial.

This action arose out of a plane crash that occurred on
September 7, 1963, near Lakeside Airport in Madison
County, Illinois. The flight originated at Nashville, Ten-
nessee. There were four people in the plane: Macon Butts,
the pilot and owner of the craft, Virgil Holmes, Burton
Marshall, Sr., and Burton Marshall, Jr. Butts and Holmes
were killed and the Marshalls were injured.

Plaintiffs alleged in their complaint that they were
fare-paying passengers in the plane and that the crash
was caused by the negligence of the defendant, Macon

Butts. They confined their charge of negligence to pilot error. Defendants claim that plaintiffs were not fare-paying passengers and that they would not be liable in the absence of proof of wilful and wanton misconduct.[1] Defendants also claimed that the crash was caused by airplane malfunction rather than pilot error.

The case was tried to a jury and a verdict was rendered in favor of the defendant. The trial court denied plaintiffs' post-trial motion for a judgment notwithstanding the verdict and for a new trial. Plaintiffs appeal.

■ Appellants contend that their status in the aircraft is governed by the laws of Tennessee. This contention was not made in the trial court so it will not be considered on this appeal. Woman's Athletic Club of Chicago v. Hulman, 31 Ill2d 449, 202 NE2d 528. Appellants also contend that the trial court erred in giving an interrogatory that required an answer only if the jury first found a verdict in favor of plaintiffs. This would have been a sound contention had appellants made their objection in the trial court. However, since this was not done, we will not consider this point on appeal. Woman's Athletic Club of Chicago v. Hulman, supra.

Appellants next contend that the trial court committed reversible error in permitting an instruction to go to the jury on the question of their status because they were passengers as a matter of law by reason of the undisputed testimony of Marshall, Sr. Whatever agreement existed to fly Marshall to Illinois was between Butts and Marshall

---

[1] The Illinois Aeronautics Act, as amended, section 22.83 (Ill Rev Stats 1965, c 15½, par 22.83) provides: "No person riding in an aircraft as a guest, without payment for the ride, . . . shall have a cause of action against any airman of such aircraft or its owner . . . in case of accident, unless the accident was caused by the wilful and wanton misconduct of the airman of such aircraft or its owner . . . ."

49

and since Butts was dead, Marshall was the only one left who could testify on this point.

Marshall testified that he had been acquainted with the defendant, Macon Butts for about two or three years prior to the accident. This was a casual acquaintance which arose from meeting him at the Nashville Airport. Butts owned a Comanche Piper aircraft, but Marshall had never ridden with Butts prior to the time of the accident. Prior to September 7, 1962, Marshall and his son had flown Marshall's aircraft to Lakeside Airport but returned to Tennessee by automobile because of unfavorable weather conditions.

On the Wednesday evening before September 7, 1963, Marshall, Sr. asked Butts if he were going to do any weekend flying. He explained that he had left his plane in Illinois and that if Butts were going to do any flying, he would pay expenses and whatever was reasonable for Butts to fly him and his son to Illinois to pick up his airplane. He testified that Butts was agreeable to this arrangement and expressed an interest to do it in order to get some flying time in his airplane on cross-country flights, as he would like to gain some instrument time. He said the specific arrangement was that he was to pay for the gas, oil and any other reasonable cost that he felt Butts would want to charge. Although no specific dollar amount was agreed upon, he was to pay Butts the cost of the trip after they returned to Nashville. He testified that it would be impossible to calculate the cost of the trip accurately prior to that time. He further testified that Butts called him back on Friday evening and asked where he wanted to go. "I told him. He said he was going to do some flying Saturday morning and that if I would meet him at the airport we would make the trip. We also discussed the agreement that I was to pay expenses and whatever was normal."

On cross-examination Marshall, Sr. admitted that it was possible that he had told Butts that he did offer to pay

50

part of the expenses or whatever was justified; it was possible that he had previously told a notary public that he would pay part of the expenses or whatever was justified; that there was no specific arrangement other than that he would pay the expenses and whatever was reasonable; that it was assumed that he would pay expenses there and back to Nashville, although there was nothing specifically said about the return trip; that there was no specific arrangement as to where or when payment was to be made.

■■ Defendants argue that the omissions, discrepancies and improbabilities in the testimony of Marshall, Sr. made the status of plaintiffs a question of fact for the jury rather than a question of law for the court. Testimony of an unimpeached witness which is not in itself inherently improbable or false and which is not contradicted by positive testimony or circumstances intrinsic or extraneous cannot be rejected even by a jury. Larson v. Glos, 235 Ill 584, 85 NE 926. However, in Hadley v. White, 367 Ill 406, 11 NE2d 813, our Supreme Court said: "As this court has frequently pointed out, the testimony of a witness may contain, within itself, its own impeachment and he may be contradicted by what he states as well as by adverse testimony, and there may be so many omissions, discrepancies and improbabilities in his testimony as to justify a court or jury in disregarding it in its entirety." Id. at 412.

■ In our opinion, the testimony of Marshall, Sr., even though uncontradicted by any other witnesses, was so equivocal on the purported arrangement between Butts and Marshall, Sr. concerning payment for the trip, that the trial court was justified in submitting the question of plaintiffs' status to the jury. Marshall admitted there was no specific arrangement as to what expenses would be paid and that he had previously told a notary public that he would pay part of the expenses or whatever was justified.

51

Appellants next contend that the trial court committed reversible error in allowing two of defendants' witnesses to give expert testimony that the crash was caused by the elevator cables becoming jammed by the radio power packs prior to the crash. These packs are about the size of automobile batteries and mounted above the elevator cables.

The first expert witness for the defendant was Charles Midyett, a licensed pilot. A lengthy hypothetical was posed to him regarding facts relevant to the issue but concluded that the statement: "Assuming . . . that it (the power packs or electrical equipment) did interfere with the operation of the elevator cables in such a manner that the elevator cables were jammed. . . ." His answer indicated that the power packs might or could have fallen on the cables while the plane was in flight. On cross-examination he admitted that it was more likely that the power pack was thrown from its mounting by the impact of the plane crash.

The other witness, Robert Odum, is also a licensed pilot. The hypothetical posed to him also included the assumption that the cables were jammed by the radio power packs while the plane was still in flight. The objection that it was speculative was overruled. On cross-examination the following interchange occurred:

"Q. Wouldn't it then be more likely, since the airplane was completely ripped apart in that area, that the power pack equipment would be torn off at the time of the crash when the fuselage was completely ripped apart, rather than falling off in the air?

"A. Could be, yes, sir.

"Q. So that your suggestion that, that it might have fallen off up in the air is a guess on your part as something that could have happened?

"A. Yes, sir.

. . . . . .

"Mr. Heiligenstein: At the conclusion of this witness's Odum's testimony, we move to strike the testimony regarding his opinion as to the fact that he says the power packs probably could have fallen out of their moorings in the aircraft while in the air and jammed the cables, on the grounds he testified on cross-examination that it was a guess on his part. Even an expert witness must have an opinion based on a reasonable degree of certainty."

This motion was overruled by the trial court.

■■■■■ The admissibility of expert testimony is conditioned upon the laying of a proper factual foundation. Expert opinion which is lacking in proper foundation is not admissible. A hypothetical question must be based on evidence which justifies or supports it. We are unable to find sufficient evidence in the record which would tend to show that the power packs were out of their normal position and interfering with the cables while the plane was in flight.

The opinion of an expert witness should constitute a definite and reasonably certain opinion of the witness and not mere conjecture, probability or speculation. In Kanne v. Metropolitan Life Ins. Co., 310 Ill App 524, 34 NE2d 732, a doctor testified that death might have resulted from chronic myocarditis. There was no evidence that the deceased had ever suffered from any illness or infirmity of this kind. The Appellate Court held that the expert's opinion was based on guess, surmise and conjecture. "Mere surmise, guess or conjecture is never regarded as proof of a fact, and a jury will not be allowed to base a verdict thereon." Id. at 530. In Wallace v. Yudelson, 244 Ill App 320, a doctor's opinion was based

53

on an assumption that a growth had been present at an earlier time. There was no evidence to support this assumption. The court held that the opinion was so highly speculative that it was not proper or competent for jury consideration. In Schwartz v. Peoples Gas, Light & Coke Co., 35 Ill App2d 25, 181 NE2d 826, an expert was allowed to answer a hypothetical question relating to a product with which he was not familiar. The court said:

> "The normal function of a witness is to state facts within his personal knowledge. To this general rule there is an important exception making admissible the opinion of an expert. He is considered qualified to provide the often necessary function of drawing inferences from facts which the jurors would not be competent to draw. As a safeguard upon the reliability of such testimony, however, the expert witness, no matter how skilled or experienced, will not be permitted to guess or state a judgment based on mere conjecture." Id. at 31–32.

The opinions of the two witnesses were mere conjectures. Without sufficient basis in fact they testified that the power packs probably interfered with the cables while the plane was in flight. They did not give an explanation which might lend some credence to this conclusion but merely stated that it was more likely that it occurred while the plane was in flight. On cross-examination they admitted that their opinions were guesses and that it was more likely that it occurred upon impact. Their opinions were based on conjecture of a fact without any evidentiary basis.

The defendant cites 20 Am Jur, § 795, as authority for allowing the testimony. The portion cited reads:

> "An expert witness' views as to probabilities is often helpful in the determination of questions involving

54

matters of science or technical or skilled knowledge. Expert opinion testimony may be given in terms of an opinion that something might, could or would produce a certain result."

However, this section continues with these qualifications:

"It is necessary, however, that the facts upon which the expert bases his opinion or conclusion permit reasonably accurate conclusions as distinguished from mere guess or conjecture. Expert opinion testimony should not be allowed to extend to the field of baseless conjecture concerning matters not susceptible of reasonably accurate conclusions. An expert's opinion must be in terms of the certain or probable, and not of the possible. Such a witness is entitled to give his best judgment or opinion on the matter under inquiry, but not to give answers which are mere guesses."

A reading of the record indicates that the testimony of these witnesses falls more under the "baseless conjecture" rather than the "probabilities" provisions of the above quotation. It was error for the court to admit this testimony. We believe that the error was sufficiently prejudicial to warrant the granting of a new trial.

For the reasons herein set forth, the judgment of the Circuit Court of St. Clair County is reversed, and the cause remanded for a new trial.

Judgment reversed and cause remanded.

EBERSPACHER and GOLDENHERSH, JJ., concur.