Louise Thomas, Plaintiff-Appellant, v. Chicago Transit Authority, a Municipal Corporation, and Otis Parks, Defendants-Appellees.

Gen. No. 53,446.

First District, Third Division.

October 16, 1969.

Rehearing denied November 13, 1969.

Reidy, Gross & Dee, and Jurco, Damisch & Sinson, of Chicago (Richard H. Lucy and James R. Mitchell, of counsel), for appellant.

George J. Schaller, O. R. Hamlink, Jerome F. Dixon, and Norman J. Barry, of Chicago, for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, Louise Thomas, brought an action for personal injury against the Chicago Transit Authority and Otis Parks, one of its drivers. A jury found for the defendants and the plaintiff appeals. She claims that she was prejudiced during the trial by an experiment which was performed by the defendants over her objection.

The plaintiff's injuries occurred on the evening of December 23, 1965, when she fell or was thrown beneath

the wheels of a bus driven by Parks. She had been window-shopping in the area of 63rd Street and Cottage Grove Avenue, and between 5:00 and 6:00 p. m., boarded a westbound 63rd Street bus to go home. She testified that all the seats were filled and people were standing shoulder to shoulder in the aisle. She made her way to the back of the bus and stood beside the rear door. When the bus stopped to take on or discharge passengers, she got out of the way of the departing passengers by stepping out the door; she would then reboard the bus and continue to stand by the door. This occurred two or three times without incident. At the corner of 63rd and State Streets, she again left the bus to permit other passengers to leave. This time, however, as she attempted to re-enter the bus, it started to move, causing her to lose her balance and fall beneath its wheels. She claimed that her right foot was on the step when the door closed and the bus pulled away.

Parks, the driver, testified that he started to drive this particular bus around 5:00 p. m. He checked the mirrors but they needed no adjustment and the doors operated without trouble. He was running behind schedule as he headed west on 63rd Street. By the time he arrived at Cottage Grove Avenue, all the seats were filled and people were standing in the aisle. The crowd increased at this and subsequent stops and most of the standing room was taken.

At 63rd Street and State Street, Parks stopped the bus, opened the doors and admitted and discharged passengers. He did not watch passengers get off because he was busy taking the fares of those who got on. He then closed the doors of the crowded bus and waited for the traffic light to change to green. He testified that he checked to see if the rear door was open and looked in the right outside rearview mirror to see if anyone was "on the door." As the bus moved forward on the green sig-

nal, the shouts of people on the street caused him to stop the bus before it passed the crosswalk. He stepped outside and saw the plaintiff pinned beneath the rear wheels.

The rear door of the bus had two panels. To open it, according to Parks, the driver would first release a lock and a passenger would have to push out on it. When the passenger let go his pressure, the door would close and the driver would relock it. Parks testified that the bus had an automatic device which prevented it from being driven if the switch which locked the rear door was open; even if the switch was closed and the rear door open, the accelerator would lock and the bus would not move.

With the court's permission and over the plaintiff's objections, the defendants' attorney conducted a demonstration using the actual bus involved in the injury to the plaintiff. He told the jury that the purpose of the demonstration, which took place on a street outside the Chicago Civic Center, was to acquaint them with its physical characteristics. Parks sat in the driver's seat, and the trial judge and the jury sat in the passengers' seats. Parks started the motor, then by means of a lever locked and unlocked the front and rear doors. The jury left the bus by pushing the rear door open; then they reboarded at the front door and took their seats.

During the demonstration, the plaintiff's attorney placed his hand in the rear door. The judge remarked that that was the part he wanted to see—whether the bus would move if the rear door was open. The defendants' attorney said that with the court's permission he would show how the interlocking device worked. He reminded the jury of the plaintiff's testimony that she had a foot within the door and the bus started, and of the defendants' contention that it was impossible to start the bus under that condition. He placed his foot on the step, preventing the door from fully closing. The driver then stepped on the accelerator and the bus did not move.

479

The experiment was repeated a second time with the plaintiff's counsel placing his foot on the step from outside the bus and the result was the same. The trial judge and the jury then returned to the courtroom and the trial continued.

██ No foundation was laid for the experiment and the plaintiff's objections should have been sustained. An experiment is incompetent without a showing that the essential conditions are the same as those existing at the time of the accident. Mack v. Davis, 76 Ill App2d 88, 221 NE2d 121 (1966); Hammer v. Slive, 35 Ill App2d 447, 183 NE2d 49 (1962); see also Handley v. Erb, 314 Ill App 207, 41 NE2d 222 (1941).

There was no showing that the bus was substantially in the same condition as it was at the time of the injury. Two and one-half years had elapsed and the bus had continued to be used. There was bound to be some wear and tear which might have affected the operation of the vehicle and there might have been replacement or repair of parts. Furthermore, the circumstances of the accident and the experiment were dissimilar. The injury occurred at the end of a shopping day, two days before Christmas when the bus was jammed with people. The driver had been on duty since 1:00 p. m. and was running behind schedule. These conditions were conducive to hurrying, carelessness and mistakes. On the other hand, the experiment was conducted with a bus which was not in service and which was empty except for the jury, the trial judge and the two attorneys. The driver, who was a defendant and an interested party, operated the bus solely for the purpose of the experiment. These conditions were conducive to carefulness.

The defendants maintain that the trial court did not abuse his discretion in permitting the experiment. They note that before it was conducted the plaintiff's attorney placed his hand in the door and they contend that the

480

subsequent demonstration became necessary because of this. The record does not support the contention that the act of the attorney compelled the demonstration. The act of the attorney followed the demonstration of how the doors functioned but preceded the demonstration about the interlocking device. Although the defendants objected to the attorney's action, they did not suggest that this action made the subsequent experiment advisable or necessary. On the contrary, their counsel said that he would proceed to demonstrate the device because the plaintiff testified that her foot was in the door and the defendants contended that if this were so the bus could not start.

The defendants also note that before the experiment was performed, Parks testified as to the mechanical operation of the bus; that he explained the functioning of the switch which had to be in a closed position before the bus would move, and of the accelerator which would lock if the rear door was open even if the switch was in a closed position. They further note that Parks testified that the switch was in proper mechanical condition and performed its function at the time the plaintiff was injured. According to the defendants, the experiment was merely cumulative of Parks' testimony of the design of the bus and the manner of its operation. They claim that the experiment was not intended and did not furnish evidence as to whether the mechanism was operating properly at the time of the accident; as to this, they assert that the jury had to rely on the veracity of Parks' testimony.

The experiment did, however, corroborate Parks' testimony as to how the mechanism functioned at the time of the accident. Until the experiment was conducted the jury had to choose between the testimony of the plaintiff and Parks—the only two eyewitnesses who testified. The experiment showed the jury not only how an interlocking system worked but how the interlocking system on

481

the bus involved in the accident worked. The defendants told the jury that the bus was the one involved in the accident but did not tell them that the bus might not be in the same condition due to use, repair or replacement of parts. They left the impression that the condition of the bus was unchanged and that the automatic interlocking system performed at the time of the injury in the same manner as it did during the experiment.

■ The error in permitting the demonstration was prejudicial to the plaintiff. The jury no longer had to weigh her testimony against that of the driver but could rely solely on the result of the test. The point of the experiment was not lost on the jury. Just before it, the defendants' attorney reminded the jury of the conflicting contentions about the ability of the bus to move if the door was partially open. After the experiment, in closing argument, the attorney referred to its lesson, "The evidence, on the bus itself, shows that if you got your foot upon the step, that the bus wouldn't go. . . ."

The defendants disparage the plaintiff's case and assert that even without the experiment the result would likely have been the same. They argue that her testimony about alighting from and reboarding the bus was improbable; that her testimony about the bus moving while she had her foot in the door was impossible, and that her testimony was inconsistent and unbelievable. The defendants conclude that the jury had ample grounds to believe that her testimony was contrived, that she had no intention of re-entering the bus after getting off at State Street, that she did not try to re-enter, and that she was injured as a result of some misadventure of her own such as tripping or falling as the bus was leaving the State Street stop.

The plaintiff's testimony about standing to the side of the door and stepping off to permit other passengers to depart was not inherently improbable; the bus was

crowded and she might have thought that her actions were necessary even if they were not. Her testimony about having a foot in the door was not impossible despite the driver's testimony about the design of the bus; he may have been wrong about the design or the safety feature might have malfunctioned. The contradictions in her testimony were minor. In sum, the plaintiff's evidence was not so weak as to be beyond belief; it could have supported a verdict in her favor.

The error in conducting the experiment without a proper preliminary foundation deprived the plaintiff of a fair trial. The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded with directions.

SCHWARTZ and McNAMARA, JJ., concur.