DENNA OLIVER *et al.*, Plaintiffs-Appellees, *v.* THE PEOPLES GAS LIGHT AND COKE COMPANY, Defendant-Appellant.

(No. 54624; ■■■■■)

First District—May 17, 1972.

Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, of Chicago, (George J. O'Grady and William J. Winger, of counsel,) for appellant.

Clausen, Hirsh, Miller & Gorman, of Chicago, (John R. Caffrey and James T. Ferrini, of counsel,) for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Peoples Gas Light and Coke Company, a corporation, appeals from a judgment entered in the Circuit Court of Cook County following a jury trial, awarding stipulated damages to the plaintiffs in the sum of $10,000.

The issues presented on appeal are: (1) whether there was any evidence that the fire in question was caused by gas; (2) whether liability can rest upon a choice between two views equally compatible with the evidence; (3) whether proof was presented that defendant was negligent; (4) whether it was the duty of the trial court to direct a verdict for the defendant or, in the alternative, to grant defendant a new trial; and (5) whether the trial court erred in refusing to give the jury a certain instruction requested by the defendant.

On Saturday evening, November 24, 1962, at approximately 9:00 P.M., a fire occurred at 10121 Avenue L, Chicago. The premises were owned by plaintiffs Denna and Robert Oliver. Plaintiffs John and Maxine Hoyt were tenants of the Olivers at the site of the fire, living in the first floor apartment. While viewing television on the evening of the fire, John Hoyt heard a noise which he took to be an auto accident. He went out the front door and, seeing nothing, he re-entered the house and went downstairs to the basement. When he opened the basement door, he was confronted by heavy black smoke. Hoyt then went to another basement

door on the north side of the house in the rear. When he opened the door, Hoyt testified he saw flames and heavy black smoke coming from the south wall of the basement in the area of the two gas meters which had been installed and maintained by the defendant.

Mrs. Hoyt testified that she also heard a loud noise. She went to see if the tenant on the second floor had fallen while painting. She saw nothing, but upon returning to the first floor apartment she noticed heavy black smoke coming from the hot air register in the kitchen. Both Mr. and Mrs. Hoyt also testified that the house shook following the noise.

Hoyt then called the Fire Department and notified the landlord, Mr. Oliver, of the fire. When Mr. Oliver arrived the whole area of the basement near the gas meters was in flames. The west gas meter was no longer on its mounting and flames were coming from its pipe connection. The east meter, however, was in place on the wall. The fire extended from the basement upwards through the walls to the first floor, second floor and roof. The furnace remained intact but the ducts from the furnace were down and the electrical wiring was burned out.

Since the fire apparently originated in the area of the basement near the two gas meters, much testimony concerning the meters was received at trial. The two meters, one for the hot water heater and one for the second floor apartment, were installed by the defendant on December 28, 1953. Defendant installed each meter with both inlet and outlet pipes constructed of lead. The meters were suspended on the south wall of the basement by the lead connections. Five or six years prior to the fire of November 24, 1962, plaintiff Oliver detected a gas leak in the basement area. Defendant, after first failing to find such leak, eventually located it in the connection to the east meter and repaired the leak by replacing both lead connections to the east meter with pipe constructed of solid steel. The west meter remained with its original lead connections until the fire.

Differing testimony was heard at trial as to the exact location of the west meter following the fire. Mr. Oliver and Mr. Hoyt both testified the meter was north of its mounting on the south wall of the basement. A defense witness, Chester Flis, testified the west meter had melted and fallen to the floor directly below its mounting. Because of the location of the west meter, as testified to by Mr. Hoyt and Mr. Oliver, in relation to its original mounted position, plaintiffs at the trial presented a theory that the fire was caused by a gas explosion. Plaintiffs presented an expert witness, Marvin Salzenstein, a consulting engineer, who, over objection by the defendant, was allowed to express an opinion based on his observations of the burned premises in answering a hy-

pothetical question as to the cause of the fire. Mr. Salzenstein concluded the cause of the fire in the hypothetical question could only be gas.

Following the opinion expressed by Mr. Salzenstein, defendant cross-examined the witness extensively. Defendant then presented an expert witness, Dr. Allen Hussey, a chemist, who answered a hypothetical question similar to the one posed to plaintiffs' expert witness by concluding the fire in question was not caused by gas.

After the presentation of all evidence at the trial, the jury returned a verdict in favor of the plaintiffs. It is from the judgment entered in the Circuit Court of Cook County based on such verdict defendant herein appeals.

The first issue presented for review is whether there was any evidence the fire in question was caused by gas. Defendant contends the opinion expressed by plaintiffs' expert witness, in answering the hypothetical question put to him, that the fire was caused by gas was based solely upon conjecture and, as such, was lacking any probative value and should have been disregarded. In support of its position, defendant relies to a great degree on the case of *Schwartz v. Peoples Gas, Light & Coke Co.* (1962), 35 Ill.App.2d 25. The court in *Schwartz* affirmed the decision of the trial court directing the verdict in favor of the defendant. The basis for the directed verdict was the fact that the opinion of plaintiffs' expert witness was mere conjecture and, as such, was without probative value. The instant case is easily distinguished from *Schwartz*, however, in that the expert witness in *Schwartz* arrived at his conclusions as to the cause of the fire in a gas stove by making an assumption which was not supported by any other evidence. The court in *Schwartz* stated this was quite clear from the information elicited from the expert on cross-examination. In the instant case, the plaintiffs' expert witness arrived at his conclusion based on the totality of circumstances surrounding the fire as well as his examination of the premises following the fire. Furthermore, upon cross-examination, the expert witness in the instant case maintained his stance that the only conclusion which could be drawn based on the totality of circumstances involved was that gas caused the fire.

■■ We believe the opinion of the expert witness in the instant case, unlike the opinion of the expert witness in *Schwartz*, was sufficiently grounded in fact to be of some probative value to the jury and, as such, we reject defendant's contention that such opinion was mere conjecture.

The second issue presented by the defendant for review is its claim that liability cannot rest upon a choice between two views equally compatible with the evidence. Defendant bases this contention on the an-

swers to those questions posed to plaintiffs' expert witness on cross-examination. When asked whether he had an opinion as to the exact location of a possible gas leak, plaintiffs' witness stated the leak was in the general vicinity of the gas meter but he did not know the precise location. When a more specific answer was sought, plaintiffs' witness stated he was unable to determine whether the leak occurred in the lead piping installed and maintained by the defendant or in the piping belonging to the plaintiffs. Based on this response, defendant claims liability cannot attach. In support of this claim, defendant reasons that if plaintiff was unable to form an opinion as to the exact location of the leak, the jury could not form such an opinion and therefore liability could not attach.

■■ The law in Illinois in regard to defendant's contention is well settled. When the record is considered in its entirety and inferences drawn therefrom support the conclusions drawn by both sides, it is the function of the jury to draw the final conclusions as to the facts. (*Finley v. New York Central R.R. Co.* (1960), 19 Ill.2d 428.) In discussing the function of the jury, the court in *Finley* stated:

"The fact that contrary inferences would be equally supported by the evidence is not sufficient to show unreasonableness of the verdict. It is the jury's function to weigh contradictory evidence, judge the credibility of witnesses and draw the ultimate conclusion as to the facts. Its conclusion, whether relating to negligence, causation, or any other factual matter should not be set aside merely because different conclusions could be drawn or because judges feel that other results are more reasonable."

■■ In accord with this holding, we reject defendant's contention that liability cannot rest upon a choice between two views equally compatible with the evidence.

The third issue on review before this court is whether proof was presented that defendant was negligent. Defendant contends plaintiffs failed to prove negligence on the part of the defendant because there was no proof of defect in materials or workmanship.

■■ Defendant supplies a potentially dangerous explosive commodity. By virtue of its superior knowledge of that commodity's characteristics, defendant is obligated to safeguard those it supplies. The obligations placed upon the defendant were noted by the Illinois Supreme Court in *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill.2d 446:

"Gas is a dangerous commodity, and the corporation which undertakes to furnish such service must exercise a degree of care commensurate to the danger which it is its duty to avoid and must use

every reasonable precaution in guarding against injury to the person and property of others."

Plaintiffs showed defendant did not act in accord with its prescribed obligation by presenting evidence which established the fact that defendant installed the gas meters in the instant case with lead connections on December 28, 1953. This was done in violation of the suggested trade practice, as set forth in the November, 1952 publication of the Heating, Piping and Airconditioning Contractors, a private association, and also contrary to the practice of the defendant itself, as testified to by an employee, James Crane, Jr., when questioned about the 1953 installation practices of the defendant. Moreover, plaintiffs showed defendant was aware such lead connections had the propensity to become faulty and leak gas. This is best exemplified by the action of the company regarding the east meter on the same premises. Defendant replaced the lead connections leading to the east meter in 1957 following complaints by plaintiff Oliver of a gas leak.

■■■ Defendant, however, contends this evidence is not sufficient to prove negligence on its part as to materials or workmanship. The rule in Illinois as to the liability of a gas company is such company is responsible for a customer's pipe if it has knowledge of a leak or of a possible defect therein. (*McClure v. Hoopeston Gas Co.* (1922), 303 Ill. 89.) In accord with this rule, we believe defendant did not act commensurate with its obligations and, therefore, we reject defendant's contention that plaintiffs did not prove negligence on the part of the defendant company.

The fourth issue presented for review is whether it was the duty of the trial court to direct a verdict for the defendant or, in the alternative, grant a new trial.

■■■ The evidence presented by both plaintiffs and defendant posed a number of questions for the trier of fact to resolve, in this case the jury. We therefore refuse to substitute our judgment for that of the trial court on defendant's motion for a directed verdict. Furthermore, as to defendant's motion for a new trial, we do not believe the finding of the jury to be against the manifest weight of the evidence and, therefore, we reject defendant's request for a new trial.

The final issue for review is whether the trial court erred in refusing to give the jury a certain instruction requested by the defendant. Defendant contends the failure of the trial court to submit defendant's instruction #13 was error because without the inclusion of instruction #13 the jury had no instruction to the effect that the burden of proof on the issues was not upon the defendant.

1100

■■ Defendant's contention as to the failure of the jury to have an instruction as to the burden of proof on the issues is not in line with the facts. The trial court in the instant case instructed the jury as to the burden of proof in accordance with the Illinois Pattern Jury Instruction recommendations by submitting both I.P.I. 21.01, defining the meaning of burden of proof, and I.P.I. 21.02, explaining burden of proof on the issues, to the jury. We therefore reject defendant's contention as being without merit.

For the reasons stated herein, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURMAN and ADESKO, JJ., concur.