ROBERT SCHOFIELD, Plaintiff-Appellant, *v.* CRANDALL, INC., Defendant-Appellee.

(No. 73-219;

Second District—November 25, 1974.

Schirmer, Schirger, Graf & Beger, of Freeport, for appellant.

Bert P. Snow, of Freeport, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff filed a personal injury suit against Crandall, Inc., a tire manufacturer. Counts I and II were based on express and implied warranty; Count III was under a products liability theory and Count IV was a negligence theory. The jury found the defendant not guilty on each count and the plaintiff appeals on two grounds: (1) that the trial court erred in allowing the jury to view a film depicting an experiment with a tire, which experiment was not similar to the actual occurrence, and (2) that the closing argument of the defense counsel was so improper and prejudicial as to deprive the plaintiff of a fair trial.

The plaintiff is the owner of an automobile service station. In the usual course of business he purchased a retreaded tire from the defendant, whose business included the retreading of all makes of tires—this particular tire not having been originally manufactured by the defendant. The plaintiff sold this tire to a retail customer and mounted it on

a wheel and installed it on the customer's automobile. The customer, with .his family, started out on a trip and after a ·very few miles the tire went flat. The customer called the plaintiff for help and the plaintiff left his shop and went to where the customer's car was located on the highway, took the wheel off the car and returned with it to his shop to repair the tire. In the process of inflating the tire to check the trouble, the tire, in the words of the plaintiff, "exploded", that is, it blew off the changer, flew up into the air and injured the plaintiff's left arm and finger. The extent of the plaintiff's injuries is disputed.

The plaintiff's case appears to be based on the premise that the tire in question was defective when it left the defendant's plant in that the tire's beading was broken or partially broken, thus causing it to "explode" off the changer while being inflated. The defendant contended, however, that the cause of the tire precipitately leaving the changer and causing injury to the plaintiff was that the plaintiff was careless, both in the mounting and in the inflating of the tire; that he inflated the tire far beyond its normal pressure of 32 pounds and that the broken beading and the overinflation caused the tire to leave the changer in the violent manner described by the plaintiff as "an explosion." Testimony of experts at the trial indicated a probability that some and possibly most of the beading was broken in the original manufacturing process. However, the plaintiff contended the beading was broken at the defendant's plant in the retreading process, and the defendant testified that in his opinion the beading was broken when the tire was overinflated on the changer by the plaintiff. There was thus a sharp disagreement not only as to when the beading was broken but also as to whether the broken beading was the primary cause of the tire "exploding" off the changer.

To bolster its theory that the tire, even with broken beading, would not come off the changer under normal pressure—estimated at 32 pounds —the plaintiff performed an experiment in which the identical tire was inflated on a similar rim to as much as 45 pounds, without leaving the rim. A film was made of this experiment and the judge allowed it to be viewed by the jury. The judge's ruling that this film could be viewed by the jury is the plaintiff's main point of appeal. Plaintiff points out that while experiments have in some cases been allowed to establish a point of evidence, these must be under very similar circumstances to the original circumstances and where the experiment does not conform to the original conditions it cannot be introduced as evidence in any form. (*Thomas v. Chicago Transit Authority* (1969), 115 Ill.App.2d 476; *Mack v. Davis* (1966), 76 Ill.App.2d 88.) However, the cited cases and others where experiments have been successfully objected to are all cases where .there were many variables ·which could not be reconciled

with the original situation; moreover, these variables were potentially capable of inducing an entirely different result from the original circumstances. Where the circumstances are essentially the same, such experiments are allowable as evidence and it is generally taken to be within the discretion of the trial judge as to whether or not such experiments so nearly approximate the original conditions as to be admissible. (*Thomas v. Buchanan* (1934), 277 Ill.App. 393; *People v.. Pfanschmidt* (1914), 262 Ill. 411; *Downing v. Metropolitan Life Insurance Co.* (1941), 314 Ill.App. 222; *Hardman v. Helence Curtis Industries, Inc.* (1964), 48 Ill.App.2d 42.) In the latter case the appellate court in affirming the trial court's admission of experimental evidence, at page 54, quoted 20 Am. Jur. *Evidence* § 758 (1939) (revised edition 29 Am.Jur.2d *Evidence* § 820 (1967)):

> "Evidence may be given of experiments and demonstrations made out of court and not in the presence of the jury upon the same principles which permit experiments to be conducted in the jury's presence. It is a matter peculiarly within the discretion of the court to decide the admissibility of such evidence in the light of all the surrounding facts and circumstances."

Speaking generally, the same authority states (29 Am.Jur.2d *Evidence* § 818 (1967)):

> "The courts, although they do not favor the making of tests and experiments by the jury itself, now very generally permit relevant experiments, demonstrations, or tests by others to be performed in court in the presence of the jury, or permit evidence to be given of experiments, demonstrations, or tests performed out of court, when they are made under similar conditions and like circumstances to those existing in the case at issue, for the purpose of aiding the trier of facts, in either a criminal or civil case, in determining the issues of fact."

■■ It is clear, therefore, that generally speaking evidence of experiments made out of court is admissible if conditions of the experiment are believed by the trial court to be substantially similar even though not identical to the actual circumstances of the case. Identical conditions can rarely if ever be achieved, and it is therefore necessary to allow some latitude to the trial court in determining whether the conditions of the experiment are sufficiently similar to the facts of the actual occurrence to have probative value.

In the case before us there were some variations from the original circumstances. The rim was not the same rim that was on the car originally and it was a different time of year so that the tire might have been colder under the original conditions than when the experiment was con-

ducted. Also, the rate of inflation may have been more rapid in the actual circumstances if, as seems probable, the plaintiff was in a hurry to get back to his stranded customer. There was no precise information as to the sealing lubricants used in either the actual incident or the experiment, so these could have been different. These are variables which the plaintiff contends make the experiment inadmissible. However, the tire was the same tire and the rim was similar. The other variables, the temperature of the tire, the amount of lubricant used and the speed of inflation were all within the control of the plaintiff. On cross-examination plaintiff's counsel brought out that variables such as the temperature, the amount of lubricant used and the speed of the inflation might affect when—and indeed, whether—the tire would leave the rim. However, it was not established that the conditions of the experiment—controlled conditions as the plaintiff admitted—were abnormal in any way. While certain conditions were not the same as in the actual incident this does not by any means refute the defendant's claim that the tire in question was capable of being inflated to normal pressure without precipitately leaving the rim and injuring someone working on it. If certain unfavorable conditions existed which were more likely to induce the tire to leave the rim then, since these conditions were within the control of the plaintiff and could have been avoided, the plaintiff can hardly impeach the experiment on the basis that such conditions were not present in the experiment. The purpose of the experiment was to demonstrate that the tire was capable of sustaining a normal inflation without "exploding" off the rim under normal or average conditions. If certain unfavorable external conditions were present and contributed to the accident this does not reflect on the experiment but rather on the plaintiff's theory that the defective condition of the tire caused the accident. In short, the variances which may have existed in the actual conditions of the incident were not ones the plaintiff can properly complain about, since—if they existed at all—they were plaintiff's doing and they militate against the theory of a defective product having caused the injuries. In any event, such possible variances do not operate against the probative value of the experiment as to the main issue involved—that is, whether the tire was so defective it would not sustain a normal inflation without leaving the rim.

■■ We note from the record that the trial judge gave careful consideration to plaintiff counsel's argument in this connection and after due consideration came to the conclusion that it was within his proper discretion to allow the showing of the film. It should be noted that the defendant's president had testified to the facts and the results of the experiment without objection by the plaintiff's counsel previous to the showing of the film. It was possibly the evidentiary impact of the film which aroused

plaintiff's counsel to object to it rather than its lack of merit as an experiment. While agreeing with the general proposition of law advanced by plaintiff's counsel as to the close scrutiny such experiments are subject to, we are not persuaded therefore that the trial court exceeded his discretion in this instance by permitting the showing of the film.

 The plaintiff also complains about two aspects of the defense counsel's closing argument which he says denied the plaintiff his right to a fair trial. He refers to a remark made by defense counsel to the effect that the plaintiff was "in one awful hurry to get this tire back on." Defense counsel objects that the defendant himself testified he was not in any hurry; therefore, the remark of defense counsel was outside the evidence and improper as suggesting carelessness due to haste. We are in complete agreement with plaintiff's counsel that "[i]t is the province and duty of the Courts to see that every litigant has a fair trial, free from the prejudicial conduct of counsel who in argument undertakes to supply facts or inferences favorable to his or her client that are not based upon the evidence in the record." In addition to the cases cited by plaintiff in this connection, see the recent opinion of this court in *Geisberger v. Quincy* (1972), 3 Ill.App.3d 437, and the case of *McWethy v. Lee* (1971), 1 Ill.App.3d 80. On the other hand, as stated in *Maguire v. Waukegan Park District* (1972), 4 Ill.App.3d 800, 805; "Counsel cannot state matters not in evidence, but can urge all reasonable inferences and conclusions which may be properly drawn from the evidence and wide latitude should be allowed." The evidence adduced at the trial indicated that the plaintiff's customer, who had purchased the tire in question from the plaintiff the day before, was stranded on the highway with other persons in the car on a Sunday morning in January. The tire had only been driven a few miles when it went flat, whereupon the customer called the plaintiff to come out and assist him. We do not have the testimony of the plaintiff before us, but we can deduce from the closing argument of defense counsel and objections of plaintiff's counsel that the plaintiff testified that he was not in any particular hurry to repair the tire. We think, however, that under the admitted circumstances it is a fair inference that plaintiff *was* in a hurry. It would hardly be believable that he was not in a hurry to repair and return the tire when his customer with other members of the family were stranded in the car on the highway. We think that in spite of whatever the plaintiff may have said to the contrary it was a fair inference that he was under pressure to repair and return the tire as quickly as possible, and under these circumstances we see nothing so improper in counsel's remarks as to justify a new trial.

██ Complaint is also made by plaintiff as to the remark ridiculing the amount claimed as damages as compared with the actual medical and

hospital expenses. While this remark was no doubt improper in a closing argument the discrepancy in this case between the medical and hospital bills (which totaled $189.50) and the *ad damnum* of $50,000 was indeed very great, and the plaintiff could hardly have expected that no notice would be taken of it. In view of the facts suggested by the record, the remark was not so grossly unfair and prejudicial as to require reversal of the judgment.

The judgment of the trial court is therefore affirmed.

Judgment affirmed.

GUILD and SEIDENFELD, JJ., concur.