LAURIE M. BECKER *et al.*, Plaintiffs-Appellants, *v.* AQUASLIDE 'N' DIVE CORP., Defendants-Appellees.

Fourth District No. 12350

Opinion filed December 24, 1975.—Rehearing denied February 25, 1976.

CRAVEN, J., dissenting.

Reno, O'Byrne & Kepley, of Champaign (J. Michael O'Byrne and Donald M. Reno, Jr., of counsel), for appellants.

Harold A. Baker, of Hatch, Corazza, Baker & Jensen, of Champaign, for appellees.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

In plaintiffs' action framed in products liability, the jury returned a verdict in favor of defendants. Plaintiffs appeal the judgment entered upon the verdicts.

Issues raised upon appeal include error in evidentiary rulings, the giving of certain of defendants' instructions and the refusing of certain of the plaintiffs' instructions.

The plaintiff, Laurie Becker, suffered injuries which resulted in his becoming a quadriplegic. His wife, Patricia, seeks damages for loss of consortium. Since the initial issues concern liability we will speak of the former as plaintiff.

Defendant manufactured and sold a certain "Aquaslide," a form of slide to be installed for use with a swimming pool. One Hallbeck purchased and installed such a slide at his residence. Plaintiff, one of a number of guests of Hallbeck, descended the slide headfirst "in a racing dive," with his arms extended above his head so that his ears were against his biceps. Following his second descent, which plaintiff described as being made in the same manner, he was discovered floating face down a foot or so beneath the surface of the pool and unable to help himself. Others present observed plaintiff's position, raised his head and he was ultimately placed upon the side of the pool. Medical tests made at the pool disclosed the essential quadriplegia. At this time, or shortly thereafter, a lump or bruise was discovered at the vertex of the head.

No one of the 16 guests in or around the pool saw plaintiff in this descent of the slide. The parties disagree as to how the injury at the top of the head occurred and such became an issue for the jury.

Without detailed mechanical description, one using the slide in a headfirst position descended some 6 feet to exit from a lip of the slide which was between 20 and 21 inches above the surface of water in the pool, 3 feet in depth. It is plaintiff's theory that he entered the water and moved as in a somersault so as to strike the top of his head. The complaint charged, and plaintiff argues, that the slide as designed was unreasonably dangerous in that there was no attached warning that descending headfirst could result in serious injury, that the prescribed or recommended 3-foot water depth was inadequate for a headfirst descent and that there was no placard or notice affixed to the slide instructing as to its proper use.

The record discloses that plaintiff had been an amateur athlete of noticeable talent and that he had generally maintained his activity. He had had substantial experience in swimming including some 2 years of former employment as a life guard. He had not, however, engaged in frequent swimming during the last year.

Defendants argue that one descending the slide into 3 feet of water with arms held stretched above his head as described by plaintiffs could

not strike his head as described upon the bottom of the pool. Defendants also presented evidence of the presence in the pool of one or more "floating chairs," together with an analysis by a physicist as to the amount of force with which one using the slide in the manner described might strike a "chair" with his head. Thereafter, a physician specializing in spinal injuries testified to an opinion that such force might cause the injuries in evidence.

Plaintiff urges reversible error in the admission into evidence of the two "floating chairs." The trial court ruled that there was some evidence that a chair was floating in the pool on the evening in question and that such evidence was admissible, even though the fact was disputed, so that there was a factual question for the jury.

Plaintiff urges that the testimony of Hallbeck, Posorske, Dilavou, Walter Baker and Mrs. Sodeman show that no "chairs" were in the pool. Hallbeck testified that his "chairs" were at the pool on that night but has no independent recollection that they were in the water. When assisting in the rescue of the plaintiff he did not see a "chair" in the vicinity. Posorske preceded the plaintiff down the slide and testified that "[t]he first time I ever recall seeing chairs was when I walked into the court room this afternoon." Dilavou testified that he never saw a "chair" in the pool. Mrs. Sodeman testified that she was on the ladder of the slide as plaintiff leaned across the top to descend headfirst. She climbed to the top and descended in a sitting position. To a question stated as to whether she saw anything "immediately below" or in the "immediate area" of the slide, she responded that she did not.

Defendant urges that there is evidence that chairs were in the pool. Plaintiff's witness, Baker, did not observe plaintiff on the slide. During cross-examination concerning his efforts to tip Mrs. Dilavou into the water, he agreed that she was apparently floating in one of the chairs. Louis Brant testified that he recalled seeing people floating in a "chair" in the pool, but he did not recall that he saw any chair in the area of the slide. Defendants emphasize the cross-examination of plaintiff. He testified to watching Hallbeck and Posorske descend the slide headfirst and Mrs. Sodeman descending in a sitting position. As to the latter he had testified that she was attempting to land in a plastic raft near the foot of the slide.

■■ The record does not undertake to state any sequence or the time span of the activities of the several witnesses. This record discloses a contradiction in the testimony as to the presence of one or more "chairs" in the pool, and plaintiff's own testimony on cross-examination indicates that an object was at some time within a short distance from the lip of

the slide. It is the function of the jury to weigh the contradictory evidence, to judge the credibility of the several witnesses and to draw the ultimate conclusion as to the facts. (*Firestone v. R. H. Lincoln, Inc.,* 23 Ill.App.3d 320, 319 N.E.2d 60; *Wisniewski v. City of Chicago,* 20 Ill. App.3d 650, 315 N.E.2d 43, *Oliver v. Peoples Gas Light & Coke Co.,* 5 Ill.App.3d 1093, 284 N.E.2d 432.) Based upon the record we agree with the trial court that there was some evidence that one or more of the "chairs" were in the pool prior to and at the time of the injury.

■■ Plaintiff urges that the trial court erred in admitting into evidence the testimony of Dr. Harvey Stapleton, a research physicist, and Dr. Robert Jackson, a physician specializing in injuries to the spine. The former made both a theoretical analysis and experimental measurements of the speed with which a person descended the Aquaslide and calculated the force with which a person of plaintiff's height and weight would strike a "chair" in the water. There was no challenge of the qualification of Dr. Stapleton. His testimony was properly admitted at the discretion of the trial court as to a subject matter concerning which only persons of skill and experience are capable of forming a correct judgment. (*Merchant's National Bank v. Elgin, Joliet & Eastern Ry. Co.,* 49 Ill.2d 118, 273 N.E.2d 809.) Upon a hypothetical question, Dr. Jackson testified to an opinion that the force generated by descending the slide so that a person struck his head upon a floating chair could "cause the injury sustained by the plaintiff". The testimony was admissible under the rule stated in *Clifford-Jacobs Forging Co. v. Industrial Com.,* 19 Ill.2d 236, 242, 166 N.E.2d 582, 586; *Wirth v. Industrial Com.,* 57 Ill.2d 475, 312 N.E.2d 593.

Plaintiff's essential argument directed to the testimony of Dr. Stapleton and Dr. Jackson is that there was no evidence of the presence of the "chairs" in the pool so that there was no foundation for the stating of the hypothetical question. He relies upon the rule stated in *Marshall v. First American National Bank,* 91 Ill.App.2d 47, 233 N.E.2d 430. That opinion is distinguishable for we have heretofore stated that the trial court did not err in determining that there was some evidence of the presence of a "chair" in the pool. As stated in *Clifford-Jacobs,* the opinion was stated upon facts assumed to be true and it remained for the jury to determine the facts.

■■ Plaintiff urges that the court erred in refusing to admit into evidence a certain motion picture of the use of a similar slide in Florida by an expert diver. The record shows that in making the experiments, the slide was not permanently fixed to the deck or apron around the pool, but that the rear legs were placed upon parcels of wood with guy wires attached to hold it in place. The trial court found that a slow

speed analysis of the picture disclosed noticeable lateral movement in the slide and the record further shows that the expert diver in successive dives was instructed to, and did, vary the position of his head and arms. Upon one such dive, the arms were dropped "as if to reach for the water." (Plaintiff's brief.) The result was that such diver somersaulted in the water and penetrated the 3-foot depth. The trial court concluded that the conditions of the experiment were not sufficiently similar to the conditions in evidence and that the picture would depict results of conduct other than that described by plaintiff in his use of the slide and that such would, or might be, misleading. (*Chicago & Eastern Illinois R.R. Co. v. Crose*, 214 Ill. 602, 73 N.E. 865.) An experiment is incompetent without showing that the essential conditions are the same as those at the time of the injury. (*Thomas v. Chicago Transit Authority*, 115 Ill.App.2d 476, 253 N.E.2d 492; *Bittner v. Wheel Horse Products, Inc.*, 28 Ill.App.3d 44, 328 N.E.2d 160; *Schofield v. Crandall, Inc.*, 24 Ill.App.3d 101, 319 N.E.2d 585.) The admissibility of demonstrative evidence is a matter of the trial court's discretion and will not be reversed absent a clear showing of abuse. *Bittner v. Wheel Horse Products, Inc.*

It is urged that the court erred in permitting one Krizan to testify as an expert witness and erred in limiting the cross-examination. The witness was a university professor teaching aquatics and swimming and had been so engaged for 26 years. He had used similar slides, as well as the one in use. In response to a hypothetical question, Krizan expressed the opinion that a person of plaintiff's dimensions using the slide in the manner described would exit from the slide and penetrate the water to a depth of about 1 foot.

■■ Plaintiff objected to the qualification as an expert for the reason that the witness had not used an Aquaslide. As we read the record, plaintiff sought to impeach the witness upon an answer in discovery deposition as to whether or not the witness had used an Aquaslide prior to a stated date. The colloquy in the record suggest that some use experience was later acquired. The trial court has a sound discretion in determining whether the witness had such knowledge or experience as permits the expressions of an opinion. Gard Illinois Evidence Manual, Rule 22 (1963); Cleary, Handbook of Illinois Evidence, 188 (2d ed. 1963).

■■ Upon the issue of the limitation of cross-examination, we have searched the record and find two apparent questions to which objections were sustained, and as to which plaintiff made offers of proof based upon a discovery deposition. The first was whether an individual descending the Aquaslide headfirst would have any idea how "deep he

would go." An objection that the answer was speculative was sustained. The witness is called to estimate the knowledge of an unidentified individual rather than the functioning of the slide. Under the rules of evidence an answer elicited in discovery may, or may not, be admissible at trial.

■■ The second question was whether or not witness would permit an inexperienced swimmer to descend the slide headfirst as it was "installed at the intramural building." The circumstances of such installation and use were not in evidence and colloquy in the record indicates that the installation was not so comparable to that of the Aquaslide as to be admissible into evidence. The question was not framed in the context of a hypothetical question and did not seek an opinion of the witness. The latitude permitted upon cross-examination is to ascertain the foundation for the opinion based upon the hypothetical question stated. (*People v. Williams*, 38 Ill.2d 115, 230 N.E.2d 224; *Hardman v. Helene Curtis Industries, Inc.*, 48 Ill.App.2d 42, 198 N.E.2d 681.) The record does not show questions directed to such foundation, and we cannot say that the court abused its discretion.

■■ Defendant introduced into evidence a motion picture showing one Dorsey descending the Aquaslide as it was installed at the Hallbeck pool. The admissibility of the motion picture in the context of similarity of condition and use is not challenged on appeal. Defendant called Dorsey as a witness to testify concerning his height and weight in comparison with that of the plaintiff. It is asserted that the trial court erred in not permitting plaintiff to cross-examine as to a conversation between the witness and a representative of defendant concerning the injury suffered by plaintiff. The trial court concluded that the essential accuracy of the method of use shown in the picture was the issue to be determined by the court. There was no attempt to cross-examine the witness concerning any conscious or subconscious control of his entry into the water. Cross-examination as to a conversation is not probative of such issue, and a conversation standing alone would introduce matters of speculation into argument to the jury.

■■ Plaintiffs called one Kimball, a university and Olympic diving coach as an expert witness. Plaintiff urges that the trial court committed reversible error in sustaining objection to a statement of opinion as to the depth of water that should be required for the use of the Aquaslide. The trial court admitted testimony that Kimball had used similar slides and he stated his analysis of the factors in the construction of the slide which would affect the user's entry into the water. The witness also expressed an opinion that a depth of 3 feet was not sufficient or safe.

Defendant objected when Kimball was asked for his opinion what

depth was necessary for a general use of the slide. The court had there-tofore sustained objections to statements of the witness which compared the speed of entry from the Aquaslide to that of a 10-meter diving board, or a dive from a 7-foot platform. When the question was asked as a part of an offer of proof, the witness stated a comparison with a dive from a 1-meter diving board. Such analogy raised collateral issues of the speed of entry from a diving board and the technique of diving which have no basis in evidence. The court's ruling was correct.

The trial court refused plaintiff's tendered instructions on the issues and on the burden of proof. As stated in plaintiff's brief, the instructions "were couched in the legal framework that a defendant manufacturer is liable for injuries sustained as a proximate result of a *defective* product, rather than [an] 'unreasonably dangerous [one]'." The court did give defendant's instructions as to the issues[1] and burden of proof[2] which included the language set out in the margin.

---

[1] "The plaintiff, Laurie Becker, claims that he sustained injuries while using the Aquaslide manufactured and distributed by the defendants.

The plaintiff, Laurie Becker, further claims that the Aquaslide contained defects which rendered it unreasonably dangerous in one or more of the following respects:

(a) The Aquaslide had no warning affixed to it that descent of the slide in a headfirst, arms extended position could result in injury.

(b) The recommended minimum water depth contained in the installation instructions was three feet.

(c) The Aquaslide had no instruction affixed to it for the proper use of the slide.

The plaintiff further claims that one or more of the foregoing conditions existed at the time the Aquaslide left the control of the defendants.

The plaintiff further claims that one or more of the foregoing conditons was a proximate cause of his injuries.

The defendants deny that any of the conditions claimed by the plaintiff rendered the Aquaslide unreasonably dangerous.

The defendants also deny that a condition of the Aquaslide was a proximate cause of the claimed injuries.

The defendants also deny that the plaintiff sustained damages to the extent claimed."

[2] "The plaintiff, Laurie Becker, has the burden of proving each of the following propositions:

First, That the Aquaslide was defective in one of the ways claimed by the plaintiff, as stated to you in these instructions; and that condition made the Aquaslide unreasonably dangerous;

Second, That the unreasonably dangerous condition of the Aquaslide existed at the time the product left the defendants' control;

Third, That the plaintiff was injured;

Fourth, That the unreasonably dangerous condition was a proximate cause of the injury to the plaintiff.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff, Laurie Becker, has been proved, then your verdict should be for the plaintiff. If, on the other hand, you find from your consideration of all the evidence that any of the propositions the plaintiff is required to prove has not been proved, then your verdict should be for the defendants."

Plaintiff contends that the proof that a condition of the product was unreasonably dangerous places too great a burden upon a plaintiff. He states that the issues are whether:

"1. Is it time to abandon the unworkable and ailing concept of unreasonably dangerous as defined in the Restatement of the Law of Torts Second (1965, § 402A) and the Suvada progeny of the case law; or

2. Assuming that the concept of unreasonably dangerous is not to be abandoned, what is the proper definition of that term for jury instruction purposes?"

We have examined the burden of proof instruction given in *Vlahovich v. Betts Machine Co.*, 45 Ill.2d 506, 260 N.E.2d 230. The instruction given here does not include the limitation upon the jury's finding of *a proximate cause* as stated in *Vlahovich*. We read that opinion to say, however, that an instruction on burden of proof properly requires that the jury find that the condition was an unreasonably dangerous one. Such authority should suffice to approve an issue's instruction in comparable language.

In the light of *Vlahovich*, it is unnecessary to examine in detail plaintiff's citations of *Cronin v. J. B. E. Olson Corp.* (1972), 8 Cal.3d 121, 501 P.2d 1153, 104 Cal. Rptr. 433, and *Clary v. Fifth Avenue Chrysler Center, Inc.* (Alas. 1969), 454 P.2d 244. As pointed out in *Collins v. Musgrave*, 28 Ill.App.3d 307, 328 N.E.2d 649, *Cronin* defines products liability in a context other than that stated in the Restatement (Second) of Torts § 402A (1965); *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182; *Dunham v. Vaughn & Bushnell Mfg. Co.*, 42 Ill.2d 339, 247 N.E.2d 401. *Clary*, itself points out that Illinois is one of 12 States which defines products liability in the context of the Restatement (Second) of Torts § 402A (1965) while *Cronin*, with five States, disregard the Restatement.

The trial court gave defendants' instruction defining "unreasonably dangerous" in the following language:

"When I use the expression "unreasonably dangerous" in these instructions, I mean a hazard of which the user of the product was not aware and a danger beyond the expectation of the ordinary user with the ordinary knowledge common to the community."

Plaintiffs' instruction, likewise defining "unreasonably dangerous," was refused. He contends that it was error to define unreasonably dangerous in terms of consumer expectation, *i.e.*, if the hazard could be expected by the ordinary user he should not recover. Plaintiff argues that the

term "unreasonably dangerous" was designed to be a defense where a plaintiff misused a safe product or assumed the risk of a known hazard.

■■ We note that IPI 2d does not undertake to provide instructions to be given upon the trial of a case in products liability. We find that defendant's given instruction defining "unreasonably dangerous" does comply with the standards for a civil instruction in that it is succinct and without any slanting toward any party.

■■ We find that in *Pyatt v. Engel Equipment, Inc.*, 17 Ill.App. 3d 1070, 309 N.E.2d 225, *appeal denied*, 56 Ill.2d 591, the court concluded that it was not necessary to define "unreasonably dangerous." We respectfully disagree. Initially we note that in *Pyatt* the conclusion of the court was influenced by, if not focused upon, the opinion in *Cronin v. J. B. E. Olson Corp.* (1972), 8 Cal.3d 121, 501 P.2d 1153, 104 Cal. Rptr. 433. Our research persuades that unlike Illinois in *Suvada* and *Dunham* and many succeeding cases, the California court does not frame products liability within the concept stated in the Restatement (Second) of Torts § 402A (1965). We agree with the conclusion stated in *Collins v. Musgrave*, that products liability in California has a totally different foundation than that followed in Illinois.

In *Dunham v. Vaughn & Bushnell Mfg. Co.*, 42 Ill.2d 339, 342, 247 N.E.2d 401, the court stated:

"[P]roducts are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function,"

and that it is for the jury to determine whether the product failed to so perform in the manner reasonably expected. In *Peterson v. Lou Backrodt Chevrolet Co.*, 17 Ill.App.3d 690, 695, 307 N.E.2d 729, the court stated that a product is considered defective within section 402A if:

"[I]t is in a condition not contemplated by the ultimate consumer, which makes the product dangerous to an extent beyond that which would be expected by the ordinary consumer who purchases it, with the ordinary knowledge common to the community concerning its characteristics."

Thus, it is stated in *Collins v. Musgrave*, 28 Ill.App.3d 307, 311, 328 N.E.2d 649, 651, *appeal denied*, 60 Ill.2d 596:

"The fact that a condition is dangerous does not necessarily mean that it is an unreasonably dangerous condition."

In *Kossifos v. Louden Machinery Co.*, 22 Ill.App.3d 587, 317 N.E.2d 749, *appeal denied*, 57 Ill.2d 608, the court pointed out that causes of action in negligence and products liability are fundamentally dis-

tinct with basically different pleading and proof. The many opinions in Illinois make apparent that a cause of action in products liability has troubled lawyers in concept and practice, and the theory of the action has required a vast literature from the scholars. The Restatement, § 402A, found it necessary to define the concept of "unreasonably dangerous" for the members of the profession. *Dunham*, and the succeeding cases, have emphasized that it is the unexpected performance of the product which is the gist of the action.

The courts have found it useful and desirable, if not necessary, to define in IPI—Civil the term "proximate cause" (§ 15.01); "wilful and wanton conduct" (§ 14.01); "assumption of risk" (§ 13.01 and 13.02), and both "negligence" (§ 10.01) and "ordinary care" (§ 10.02). Such definitions by instruction give to the individual jurors a common understanding of the principles upon which they must decide the issues as a jury. We are persuaded that within the context of products liability as defined and as used in Illinois, the concept of "unreasonably dangerous" is neither generally understood by jurors nor within their common experience.

Upon the conclusions reached, it is unnecessary to review the issues argued by the plaintiff concerning the evidence of damages which was excluded.

The judgment is affirmed.

Affirmed.

SMITH, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The plaintiffs were denied a fair trial because of errors in crucial evidentiary rulings and errors in instructions. Upon this record, this case should be remanded for a new trial because of those errors.

There is no evidence in this record that the so-called "floating chairs" were anywhere in the slide area at any time relevant to the occurrence. Notwithstanding this, the chairs were admitted as exhibits. The chairs have a high back and metal arm rests. Such would not, indeed could not, be the same as a "floating raft." It is apparent from the physical appearance of the chairs that one would not go down a slide and attempt to land on such chairs as a raft. Plaintiff Laurie Becker did state that one person who used the slide tried to get onto a plastic or rubber raft. Upon redirect examination, he testified, however, that defendant's exhibits No. 1 and No. 2 (the chairs), had not been near him or near

the slide on either of his descents into the water. The majority opinion approves the admission of the chairs because of "contradictory evidence." I must respectfully state I find no evidence that warrants the conclusion that there is any conflicting evidence placing the chairs in the slide area. In view of the subsequent evidentiary rulings after the admission of the chairs, the erroneous admission of the chairs as exhibits was clearly prejudicial to the plaintiffs.

After the chairs were admitted as exhibits, two expert witnesses testified, in substance, that the injuries to the plaintiff Laurie M. Becker could have been caused by striking the chairs upon exiting the slide. The admission of such testimony was error. It is not permissible to permit an expert to testify directly or in response to hypothetical questions upon the assumption of facts when those facts are not in evidence or readily deducible from facts in evidence. *Gus T. Handge & Son Painting Co. v. Industrial Com.*, 33 Ill.2d 201, 210 N.E.2d 498; *Guardian Electric Manufacturing Co. v. Industrial Com.*, 53 Ill.2d 530, 293 N.E.2d 590.

The plaintiffs and defendant each offered as an exhibit a filmed experiment purporting to show the depth achieved by a person of plaintiff's build and weight using the slide with the same method of descent and an identical Aquaslide. Plaintiffs' film clearly shows a penetration of the water well beyond 3 feet. The film offered by the plaintiffs had been made in a pool in Ft. Lauderdale, Florida, and the slide was installed at the pool in the same manner and at the same distance from the water as was the Aquaslide at the residence where plaintiff was injured. The slide was set on plywood and clamps and guy wires were used to steady the slide. As indicated, this film clearly shows penetration of the water well beyond 3 feet. The film was denied admission as an exhibit upon the theory that the guy wires permitted of a horizontal movement of the slide which would cause a slight vibration. Also, the court appeared to deny admission upon the basis that the slider was going down "in all kinds of positions." The defendant's film was made with the slide involved and at the pool involved in plaintiff's injuries. The person shown in the slide was approximately the same size and weight of the plaintiff. Plaintiffs' counsel attempted to find out from him what he had been told concerning the injury to Laurie Becker before he participated in the slide experiment and film. The court sustained objections to this line of inquiry and an offer of proof indicated that the slider had been informed of the severe and permanent injuries and how they allegedly occurred. The plaintiffs contend that this ruling was error and I agree. Knowledge of the nature and extent of plaintiff's injuries could clearly affect the way the slider used the Aquaslide in the experiment. The way

the hands and head would be placed or used to avoid, even subconsciously, a deep penetration of the water, clearly is a matter that would affect the weight to be given defendant's exhibit, if not its admissibility.

I recognize that filmed experiments are incompetent unless the essential conditions of the experiment are shown to be the same as those existing at the time of the accident. (*Hammer v. Slive*, 35 Ill.App.2d 447, 183 N.E.2d 49.) It is also true that the admissibility of such filmed experiments is a matter addressed to the discretion of the trial judge. In this case, the trial court rulings were inconsistent. Plaintiffs' films with minor variations from the essential conditions were denied admission. The defendant's film with some deviation from the existing conditions was admitted into evidence and the jury was denied knowledge of the change in conditions being the knowledge by the diver of possible serious potential injury. Both films should have been admitted and the slight discrepancies in the conditions should have been made known to the jury as they would affect the weight to be given the exhibits. (See *Mack v. Davis*, 76 Ill.App.2d 88, 221 N.E.2d 121; *Schofield v. Crandall*, 24 Ill.App.3d 101, 319 N.E.2d 585.) In viewing defendant's film, it is not always possible to ascertain the position of the slider's hands because of bubbles, splashes, reflections and shadows. Thus, so far as position of the slider is concerned, it may well be susceptible to the same objection that operated to exclude the plaintiffs' film.

The trial court refused plaintiffs' instructions defining "unreasonably dangerous" and gave defendant's instruction defining that term. The majority approves the giving of such instruction and in so doing, states its disagreement with the third district opinion in *Pyatt*. The consequence of the majority opinion is that in products liability cases no instruction is to be given defining "unreasonably dangerous" for cases tried in the third district and an instruction is to be given defining the term for trials located in the fourth appellate district. While uniformity of appellate decisions is neither required nor to be reasonably anticipated, no persuasive reason is given for adopting a rule in this district contrary to express authority. The fact that the Restatement of Torts defines the concept of "unreasonably dangerous" for the legal profession is hardly persuasive.

For the reasons stated, I would reverse the judgment entered upon the verdict of the jury and remand this case to the circuit court of Champaign County for a new trial.