Argued March 14, affirmed July 16, 1958

# AMERICAN PRODUCE CO. *v.* MARION CREAMERY & POULTRY CO.

### 327 P. 2d 1104

*James C. Dezendorf* argued the cause for appellant. On the briefs were Koerner, Young, McColloch & Dezendorf, James H. Clarke and Marshall C. Cheney, Jr., all of Portland.

*Lloyd V. Weiser* argued the cause for respondent. On the brief were Weiser & Bowles and David W. Young, Portland, and Williams & Skopil, Salem.

Before Perry, Chief Justice, and Rossman, Mc-Allister and Sloan, Justices.

ROSSMAN, J.

■ This is an appeal by the plaintiff from a judgment which the circuit court entered in favor of the defendant in an action, which the plaintiff instituted under the procedure authorized by ORS 75.690(1) (d), to rescind the purchase by it from the defendant of two carloads of frozen dressed turkeys and to recover judgment for their purchase price, $25,563.28. The complaint alleged that the defendant had made and breached a warranty of the quality of the turkeys. The action was tried without a jury. General findings favorable to the defendant were entered. In appealing, the plaintiff presents two assignments of error: (1) failure of the circuit court to direct a verdict for the plaintiff, and (2) the entry of findings and judgment for the defendant.

The plaintiff is located in Portland, the defendant in Salem.

January 7, 1954, the plaintiff sent a telegram to the defendant as follows:

"This confirms purchase from you car AYT 24 to 26# at 38½¢ car AYT 26 to 28# at 39¢ f.o.b. Terminal Ice, Salem both frozen, storage paid to end of January. Federal grading certificate with manifest and negotiable warehouse receipts to accompany your invoice. Delivery ealy [sic] week January 11th."

AYT is a symbol for Grade A Young Tom Turkeys. "24 to 26#" and "26 to 28#" are class designations. The numerals "38½¢" and "39¢" are prices per pound. The turkeys were in storage in the warehouse of Terminal Ice and Cold Storage Company in Salem.

January 11, the defendant delivered to the plaintiff an invoice billing the plaintiff for two lots of Grade A frozen N.Y. dressed turkeys. There were 336 boxes in one lot and 311 in the other. Four turkeys were packed in each box. The defendant also delivered to the plaintiff a federal grading certificate issued by Jess McIlnay for each of the two lots. One of the two certificates indicates that of the 336 boxes the grader had examined 34 and had found in them 127 birds, or 93%, that were of U. S. Quality A and nine birds, or 7%, that were U. S. Quality B. The lot was designated on the certificate as U. S. Grade A. Of the lot consisting of 311 boxes the certificate stated that the grader had examined 32 and had found in them 122 birds, or 95%, of U. S. Quality A and six birds, or 5%, of U. S. Quality B. This lot was also designated in the certificate as U. S. Grade A.

We will shortly quote the governing provisions of the United States standards for quality of dressed poultry and ready-to-cook poultry, but before so doing take note of the fact that the term "Quality" refers to the characteristics of the individual bird. CFR, § 70.104. The term "Grade" refers to a lot which meets the requirements of § 70.105 CFR.

Since more than five per cent of the containers in each lot were drawn for sampling purposes, both certificates indicate on their face a compliance with the United States Department of Agriculture regulations. The certificates were on forms prepared by the Department, as already indicated, by Jess McIlnay, a licensed grader. McIlnay was in the employ of the defendant.

We will now take note of the regulations promulgated by the Department of Agriculture, which govern the grading and inspection of poultry. They are found

in Code of Federal Regulations, § 70.105(b)(1) as follows:

> "Any lot of dressed poultry or ready-to-cook poultry composed of one or more containers of carcasses of the same kind and class may be designated as U. S. Grade A if not less than 90 percent, by count, of the carcasses in such lot are of A Quality, the remainder is of B Quality, and no individual container in such lot contains more carcasses of B Quality than in the proportion of 2 to each 12 carcasses in the container."

Section 70.31 CFR:

> "Grading service performed with respect to any quantity of products shall, as the case may require, be on the basis of an examination, pursuant to the regulations in this part, of each unit thereof or of each unit in the representative sample thereof drawn by a grader. Whenever the grading service is performed on a representative sample basis, such sample shall be drawn and consist of not less than the minimum number of containers as indicated in the following table:
>
>     *    *    *
>
> "In excess of 140 containers   *   *   *.
> "Five percent of the number of containers in the lot."

The two grading certificates which McIlnay issued and which are described in a preceding paragraph were offered in evidence by the plaintiff as a part of its case in chief. The offer was accompanied by several other documents. When plaintiff's counsel made the offer he sought the imposition of no limitations upon the purposes to which the certificates could be applied. At the outset, defendant's counsel presented the objection that the two papers had not been "identified or authenticated." After colloquy the ob-

jections were withdrawn and the two certificates were received in evidence.

The plaintiff claimed that it had no reason to question the grade of the turkeys until May 6, 1954, when one of its employees, in checking the turkeys for a prospective sale, became satisfied that the lots were not Grade A. The plaintiff then requested Mr. H. W. Zangerle, the officer in charge of the poultry grading branch of the Portland office of the United States Department of Agriculture, to grade the turkeys. Mr. Zangerle examined the two lots on May 19, 1954, and issued two certificates covering them which indicated that they were not Grade A. The sample which Mr. Zangerle employed was not large enough to allow him to designate the lots with a grade rating, but the alleged discovery of a Quality C bird and of a higher proportion of Quality B birds per units of twelve examined rather than in the ratio of two to twelve was sufficient under the above-quoted regulations to require him to certify that the lots were not Grade A on May 19, 1954. The turkeys were killed during September, October, November and December, 1953. From the evidence before it, the court could have found that frozen turkeys retain their grade in cold storage for a period of from six to ten months. Mr. Zangerle testified, and it was not disputed, that the defects which he said he discovered, such as pinfeathers and fleshing, could not have developed since January 11, 1954.

May 28, 1954, the plaintiff notified the defendant of its election to rescind the contract of sale for purported breach of warranty. Between the time of delivery of the turkeys to the plaintiff and the notice of rescission, the price of turkeys had declined about three cents per pound.

July 8, 1954, pursuant to stipulation, the turkeys

were returned to the defendant without prejudice to the rights of either party. After the transfer had been entered upon the books of Terminal Ice & Cold Storage Company, the defendant sold 102 boxes to Interstate Poultry Company as Grade A, but without certificates. In April, 1954, the plaintiff sold 25 of the boxes to a concern entitled Meats Incorporated of Seattle as Grade A turkeys. The president and managing head of Meats Incorporated, B. W. Horton, negotiated the transaction on behalf of his company, and, as a witness, described his extensive experience in the turkey business as well as his familiarity with the grading rules promulgated by the United States Department of Agriculture. We now quote from his testimony:

"Q And you purchased turkeys, based on United States Department of Agriculture grading rules, have you?

"A I have.

"Q Very well. I will ask you the question now, do you know of your own knowledge what the grade of this 25 boxes of turkeys, purchased from American Produce, one of Lot L-1403, were when they were received at your plant?

"A It is my opinion that they were Grade A.

"Q You had no objection to them as to grade?

"A We had no objection to them as to grade."

From July 12 to July 15 the defendant conducted an inspection of the turkeys. On July 16 it requested Mr. Zangerle to grade them again. Mr. Zangerle inspected some of them and issued certificates for each of two new lots, certifying that they were U. S. Grade A. One lot of 320 boxes was made up of 173 boxes from one of the original lots and 147 boxes from the other. The second lot of 97 boxes came entirely from one of the original lots. The records of Terminal Ice &

Cold Storage Company indicate that the transfer to new lots did not take place until July 19, 1954. Mr. Zangerle testified that while performing his work he saw some birds of a lower grade. The following is taken from his testimony:

"Q  What was the grade of the other birds that you examined which are not covered by the certificate?

"MR. WEISER: I object again, Your Honor—what other birds are they—we don't know.

(Argument by respective counsel)

"THE COURT: Overrule the objection. You may answer.

(Question read)

"A  They were a lower grade bird.

"Q  Lower than Grade A?

"A  Yes.

"Q  Do you remember approximately how many boxes there were that were below Grade A that are not covered by the certificate?

"A  No, I can't give you the exact number of birds.

"Q  Was it a large number?

"A  I couldn't say as to that; I don't know."

No effort was made to show to whom the other birds of a lower grade belonged.

By July 30, 1954, all of the turkeys which were the subject matter of the action had been shipped out of Terminal Ice & Cold Storage Company.

The above, we believe, sufficiently reviews the part of the evidence which governs the assignments of error presented by the plaintiff-appellant.

If the record contains any evidence in contradiction of a material element of the plaintiff's cause of action, the trial judge committed no error when he denied the

plaintiff's motion for a directed verdict. Since the plaintiff had the burden of proof, the second assignment of error merely presents the same general issue as the first. Accordingly, the assignments of error must be denied and the challenged judgment must be affirmed, if the record contains any evidence which, by denoting that the turkeys were Grade A, contradicts the plaintiff's assertion that a breach of the alleged warranty occurred.

We have taken note of the following items of evidence upon which the defendant depends in part to show that the plaintiff's case met with contradiction: (1) the sale by the defendant of 102 boxes of the turkeys to Interstate Poultry Company as Grade A; (2) the sale in April, 1954, by the plaintiff of 25 of the boxes to Meats Incorporated as Grade A, and the fact that the buyer found them to be Grade A; and (3) the certificates issued by Mr. Zangerle in July, 1954. Since the plaintiff questions each of those three items of evidence, we shall, without analyzing the merits of its criticism, consider another item of which we have already taken note.

It will be recalled that a licensed grader by the name of McIlnay graded the turkeys before the plaintiff purchased them and issued two certificates which state that they were Grade A. It will also be recalled that McIlnay's certificates were delivered to the defendant at the time of its purchase and that they constitute a part of the record before us. It was the plaintiff which presented them for introduction in evidence, and, as will be recalled, it requested no limitation upon their use when it offered them.

■■ The question for decision is whether a poultry grading certificate of the United States Department of Agriculture, issued and signed by a licensed grader

who is employed by the seller, and which is offered in evidence by the buyer without any effort to limit its purpose, say, to the establishment of the making and communication of a statement, and which is admitted by the court without any limitation whatever, may be employed by the seller as proof of the facts which it recites; that is, that the turkeys were Grade A.

> "A failure to make a sufficient objection to evidence which is incompetent waives, as we have seen, any ground of complaint of the admission of the evidence. \* \* \* But it has another effect, equally important. If the evidence is received without objection it becomes part of the evidence in the case, and is usable as proof to the extent of whatever rational persuasive power it may have."

McCormick, Evidence, § 54. See, to like effect, Conrad, Modern Trial Evidence, § 1210. According to 88 CJS, Trial, § 87, p 194:

> "While evidence admitted generally is in the case for any legitimate purpose, evidence cannot be used for another and totally different purpose by the party offering it which is offered and admitted for a limited purpose. Where, by express ruling, it is limited to one purpose, without exception, it cannot be used for another purpose. It is manifest that any other rule would result in surprise and injustice. Where a party offers evidence for a limited purpose, he is not bound by the evidence for another purpose."

The following is taken from *Kucaba v. Kucaba*, 146 Neb 116, 18 NW2d 645:

> "As stated in Baxter v. National Mortgage Loan Co., 128 Neb. 537, 259 N.W. 630, 638: 'Evidence which is admitted generally is in the case for any legal purpose for which it is admissible, although the evidence when introduced was intended for a particular purpose."

See, in accord, *Shepard v. Purvine,* 196 Or 348, 248 P2d 352.

■ The rule of which we have just taken note applies whether the evidence is relevant to the proof of the offering party's cause of action or to the disproof of that cause of action. *Hibernia Securities Co. v. United Mfg. Co.,* 154 Or 369, 59 P2d 384; *Wasiljeff v. Hawley Paper Co.,* 68 Or 487, 137 P 755; *Johnson v. McKean,* 177 Or 556, 162 P2d 820.

■ At the end of plaintiff's presentation of its case in chief, the defendant moved for an involuntary non-suit on three grounds, one of which was that "there is a prima case now in plaintiff's own case of a Grade A certificate which was issued and which was in evidence." The record does not reveal that the plaintiff made any attempt at that juncture to withdraw or limit the effect of the certificates. After permitting the defendant to rely upon them in the manner just indicated, as establishing the grade of the turkeys, we do not think that it should now be permitted, upon appeal, to adopt an attitude toward the certificates which will be virtually tantamount to treating them as admitted for a restricted purpose only.

Having decided that the certificates of January 11 (McIlnay's) were in evidence and relevant to the grade of the turkeys, we will now consider the effect which the circuit court could give to them.

■ It was contemplated that grading certificates should be received in the Federal courts as prima facie evidence of the facts recited in them.

"Any official certificate issued under the authority of this subsection shall be received by all officers and all courts of the United States as prima facie evidence of the truth of the statements therein contained."

7 USCA § 1622(b). ORS 616.065 makes the same provision for the courts of this state concerning certificates issued by the officers and agents of the State Department of Agriculture.

The certificates which are intended to be evidence of the truth of their contents in a court of law are entitled undoubtedly to the same effect in the market place. The buyer and seller, therefore, were justified in relying on the certificates as indicating the real grade of the turkeys. As we have seen, each certificate showed upon its face that it was prepared by a licensed grader who acted pursuant to regulations written by the Department of Agriculture. The certificates indicate, however, that the statement that the turkeys in the lot were Grade A was based upon the premise that the grade of a representative sample of sufficient size would denote the grade of the entire lot. Although the plaintiff argues that the certificates are an express warranty by the seller that the turkeys in the lot are Grade A, we believe that it is questionable that a seller warrants the truth of the premise upon which grading by sample is based, or that the buyer relies upon any purported warranty of that kind.

If the buyer was dissatisfied with the accuracy of the certificates, § 70.36 CFR enabled it to secure a regrading. If the turkeys had been regraded and new regrading certificates had been issued, the original certificates would have been superseded and rendered void of any force or effect. Such procedure is fair to both buyer and seller, for all interested parties must be informed of the regrading and may appeal from it. If the appeal is successful, and appeal-grading certificates are issued, they supersede all prior certificates as of the date of the original certificates. Section 70.37 CFR.

■ In the present case, the two certificates that Mc-Ilnay issued were never superseded. Once admitted without objection and without restriction, they could be regarded as evidence, not only of the grade of the sample, but also of the grade of the lot. The plaintiff argues that the certificates were rendered without effect because the records of the Terminal Ice & Cold Storage Company do not indicate that the turkeys were graded on the date that the certificates state the grading took place. We cannot make that determination upon this appeal.

The above disposes of the contentions submitted by this appeal. The assignments of error lack merit.

Affirmed.